In re Alan T. LEVY, Debtor.

Sandra Alworth, Plaintiff,

v.

Alan T. Levy, Defendant.

Bankruptcy No. 99–28391WHB.
Adversary No. 99–0850.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 7, 2000.

Daniel Loyd Taylor, Causey, Caywood, Taylor, McManus & Bailey, Memphis, TN, for plaintiff.

Randall J. Fishman, Ballin, Ballin & Fishman, Memphis, TN, for defendant.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

The Plaintiff, Sandra Alworth, has filed her motion for summary judgment, supported by a memorandum and certain pleadings from the Chancery Court of Shelby County, Tennessee, including the transcript of the Chancellor's oral ruling, and the Defendant, Alan T. Levy, has responded to the motion. This adversary proceeding was initiated with the Plaintiff's complaint seeking a determination

that the debt arising from a pre-bankruptcy, Chancery Court judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The motion for summary judgment asserts that there is no disputed issue of material fact and that the Defendant is precluded from relitigating the Chancellor's finding of fraud that underlies that court's monetary judgment; thus, as a matter of law, the Plaintiff moves for an order concluding that the judgment is nondischargeable. The Defendant's response asserts that the Chancellor did not find each transfer from the Plaintiff to the Defendant to be induced by fraud; however, as this Opinion will discuss, the Defendant is barred both by preclusion and the *Rooker–Feldman* Doctrine from attempting to go behind the Chancery Court judgment. As a result, this Court will **GRANT** the motion for summary judgment.

## FACTS

It is unnecessary for this Court to explore all of the facts involved in the parties' litigation before the Chancery Court. The complaint in that court alleged that the Plaintiff loaned money at various times to the Defendant, approximating $132,000.00, and that those loans were induced by the Defendant's fraud, in that the "Defendant intentionally misrepresented to Plaintiff the status of their continuing relationship and thereby caused Plaintiff to suffer damages in the form of Plaintiff supplying Defendant with funds under the belief that their relationship was still intact." Other theories in that complaint were voluntarily dismissed prior to the Chancery Court trial. The Defendant participated in the defense and trial in that court, resulting in the Chancellor's transcribed, oral ruling, which this Court has examined. Although this Court inquired of the parties whether a full transcript of the Chancery trial was available, and counsel for the Plaintiff advised that a transcript had not been ordered, this Court has determined that its review of the trial

transcript is unnecessary in view of the Chancellor's detailed ruling. That ruling, and its resultant judgment, establish the following:

1. The Chancellor found that Mr. Levy was a "knowing and willful perjurer," and the Chancellor found Ms. Alworth to be credible.

2. Both the Plaintiff's and Defendant's testimony convinced the Chancellor, "in excess of a preponderance of the evidence of fraud on his [Mr. Levy's] part."

3. The Defendant "minipulate[d]" and "used" Ms. Alworth "with a fraudulent intent, ... us[ing] her to get this money."

4. "There was an ongoing course of conduct."

5. The Plaintiff's money was loaned to the Defendant, rather than given as a gift.

6. In addition to the monetary judgment for $117,993.49, the Chancellor awarded pre-judgment interest at 8%, and because of the finding of fraud, an award of punitive damages of $15,000.00 was given.

7. This Chancery judgment is final, having been entered on June 18, 1999, before the Debtor/Defendant filed for chapter 7 relief on July 16, 1999.

## CONCLUSIONS OF LAW

The principle of collateral estoppel applies in bankruptcy dischargeability proceedings as it does in other courts. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Although this is not a pre-bankruptcy, default-judgment scenario, the discussion of preclusion found in the Sixth Circuit's *Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995), is instructive. First, the bankruptcy court must give "the same full faith and credit [to a state court judgment] ... as they have by law or usage in the courts of such State ... from which they are taken." *Id.* at 53 (quoting 28 U.S.C.

§ 1738). Second, although a fraud-based dischargeability determination under 11 U.S.C. § 523(a)(2)(A) lies exclusively in the bankruptcy court, *see* 11 U.S.C. § 523(c), "a state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts." *In re Bursack*, 65 F.3d at 53 (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985)). Third, "[i]n cases involving claims within the exclusive jurisdiction of the federal courts, a court determining whether or not to apply collateral estoppel first must determine if a state court judgment would receive preclusive effect in the state where it was rendered." *Id.* (citing *Marrese*, 470 U.S. at 386, 105 S.Ct. at 1334–35). "If the answer to this question is yes, the court must give that judgment preclusive effect unless it determines that an exception to § 1738 should apply." *Id.* This third prong of the test typically comes into play when the pre-bankruptcy judgment is based upon a default rather than a trial on the merits.

█ In the current case, Mr. Levy participated in a trial on the merits. There is no question about Tennessee courts giving the Chancery Court's fraud-based judgment preclusive effect, as "collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment of the earlier case." *Id.* at 54 (citing *Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn.1987)).

█ In this case, the fraud issue was raised in the Plaintiff's Chancery Court complaint, it was actually litigated in that court, and a finding of fraud was integral to the Chancellor's ruling. Moreover, a finding of fraud was necessary to the judgment, in that Tennessee law requires a finding of fraudulent, intentional, malicious, or reckless conduct to support a judgment of punitive damages. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992). The Chancellor was quite specific in finding fraud as a basis for his award of punitive damages. The Supreme Court has instructed that upon a determination of fraud, "any debt" arising from that fraudulent conduct is excepted from discharge. *Cohen v. de la Cruz*, 523 U.S. 213, 218–19, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). Therefore, the entire fraud-based judgment is subject to § 523(a)(2)(A)'s exception from discharge.

This Court is also instructed by the Sixth Circuit's *Bursack* opinion that there is no merit to an argument that "the elements necessary to prove fraud under Tennessee law differ from the elements necessary to prove fraud under 11 U.S.C. § 523(a)(2)." 65 F.3d at 55. In the bankruptcy court's *Bursack* opinion, a more complete discussion of those elements is found. That court analyzed the § 523(a)(2)(A) elements in comparison to Tennessee's fraud elements and found them "virtually identical." *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 163 B.R. 302, 305 (Bankr.M.D.Tenn.1994). Thus, the Chancellor's specific finding of fraud underlying the debt in this case is satisfactory for collateral estoppel purposes in this dischargeability proceeding.

The Debtor asserts in his response to the summary judgment motion that the Chancellor did not make a specific finding that each of the transfers from the Plaintiff was induced by fraud. However, the Debtor both misunderstands collateral estoppel and fails to take into account the *Rooker–Feldman* Doctrine. First, the Chancellor's ruling included a finding of an ongoing pattern of fraudulent conduct. Second, there is only one monetary judgment, the entirety of which supported the Chancellor's pre-judgment interest and punitive damage awards. It is illogical to attempt to read the Chancellor's finding as leaving the door open for part of the transfers to be fraudulent and part non-fraudulent.

■ Moreover, the Debtor is attempting to collaterally attack the Chancellor's findings and judgment, in an effort to say that a portion of that judgment may not be fraud-based. Apparently, the Debtor chose to file for bankruptcy relief rather than appeal the Chancery Court judgment. The state appellate courts were the appropriate courts in which to attack that judgment. The Supreme Court has made it clear in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), that "the federal trial courts have only original subject matter, and not appellate, jurisdiction [and] ... may not entertain appellate review of [or collateral attack on] a state court judgment." *Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 536 (6th Cir. BAP 1999) (quoting *In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D.Tenn.1997)).

■ Not only does *Rooker–Feldman* prohibit a federal trial court from reviewing a state court judgment, the prohibition extends to any cases that are "inextricably intertwined" with a state court's determinations. *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. at 1316. A "federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring). However, a court need not address whether a claim is "inextricably intertwined" when the precise claim raised in the federal proceeding was previously raised in the state court. *See Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198–99 (2nd Cir. 1996); *Olson Farms v. Barbosa*, 134 F.3d 933, 936 (9th Cir.1998). In this case, there is no need to determine whether the case is "inextricably intertwined;" the Doctrine applies because the precise claim raised in state court is now before this court.

■ Although preclusion and the *Rooker–Feldman* Doctrine are related, courts within the Sixth Circuit have recognized differences. *In re Singleton*, 230 B.R. at 537. While both doctrines apply regardless of whether the state court judgment was in error, *Rooker–Feldman* combines both abstention and preclusion. *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995). In contrast, *Rooker–Feldman* is "broader than claim and issue preclusion because it does not depend on a final judgment on the merits." *In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D.Tenn.1997) (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n. 1 (8th Cir.1995)). Moreover, *Rooker–Feldman* is jurisdictional in nature and cannot be waived. *In re Singleton*, 230 B.R. at 537 (citing *Blanton v. United States*, 94 F.3d 227, 233–34 (6th Cir.1996)). If a dismissal is based on *Rooker–Feldman*, the case or proceeding is dismissed based on jurisdictional grounds, whereas a dismissal based on preclusion is a decision on the merits. *Hart v. Comerica Bank*, 957 F.Supp. 958, 973 (E.D.Mich.1997).

Other circuits have discussed the application of res judicata and collateral estoppel in conjunction with the *Rooker–Feldman* Doctrine. In *Valenti v. Mitchell*, the Third Circuit determined that although each is a separate doctrine, they have a "close affinity" to each other. *Valenti v. Mitchell*, 962 F.2d 288, 297 (3d Cir.1992). In *Moccio*, the Second Circuit looked to preclusion principals in order to determine whether *Rooker–Feldman* barred a claim which fell within the category of "inextricably intertwined." 95 F.3d at 200. While recognizing the waiver distinctions between the doctrines, the Second Circuit noted that "the interest that the doctrine [*Rooker–Feldman*] is designed to protect—the integrity of state court judgments—are already served, arguably adequately, by the preclusion doctrines and full faith and credit." *Hachamovitch v. DeBuono*, 159 F.3d 687, 698 (2nd Cir.1998)

■ Some courts have chosen to begin and end their analysis by applying *Rooker–Feldman* and dismissing for want of jurisdiction. *See Garry v. Geils,* 82 F.3d 1362 (7th Cir.1996); *Ferren v. Searcy Winnelson Co. (In re Ferren),* 227 B.R. 279 (8th Cir. BAP 1998). Because the question of subject matter jurisdiction can be raised by any party or by the court at any time, "federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists." *In re Singleton,* 230 B.R. at 536 (quoting *Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 890 (6th Cir. 1998) (citations omitted)). Due to the fact that *Rooker–Feldman* is jurisdictional, a court must first determine whether the doctrine applies before addressing any other affirmative defenses such as res judicata or collateral estoppel. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554–55 (7th Cir.1999). In *Singleton,* faced with an appeal from a grant of a motion to dismiss for failure to state a claim, the Sixth Circuit's Bankruptcy Appellate Panel raised jurisdiction, found *Rooker–Feldman* applied, and affirmed the bankruptcy court based on *Rooker–Feldman* without the need to address failure to state a claim. *In re Singleton,* 230 B.R. at 535.

■ Although this Court clearly has subject matter jurisdiction over this dischargeability complaint, that does not mean that it has jurisdiction to decide the underlying fraud issue that was previously determined by the Chancery Court.

■ The Sixth Circuit has recognized several exceptions to the *Rooker–Feldman* Doctrine. The Doctrine does not apply if the state court judgment was "procured through fraud, deception, accident, or mistake...." *Sun Valley Foods v. Detroit Marine Terminals, Inc.,* 801 F.2d 186, 189 (6th Cir.1986) (quoting *Resolute Ins. Co. v. State of North Carolina,* 397 F.2d 586, 589 (4th Cir.1968)). Nor does it apply if a suit is brought in federal court by a party who was not a party to the state court action. *Owens,* 54 F.3d at 274. Finally, according to the Bankruptcy Appellate Panel, if a federal statute authorizes the federal review of a state court judgment, *Rooker–Feldman* is inapplicable. *In re Singleton,* 230 B.R. at 538; *see* 28 U.S.C. § 2241. None of these exceptions apply to this case; the judgment was not procured through fraud, all parties to this proceeding were present in the state court case, and no federal statute authorizes federal review.

The end result is the same regardless of whether this court invokes the *Rooker–Feldman* Doctrine and grants the motion for summary judgment based on lack of subject matter jurisdiction to redetermine the fraud or finds that Mr. Levy is collaterally estopped by the state court judgment: The motion for summary judgment is granted. Therefore, under either doctrine, the Debtor may not attempt to collaterally attack the amount of the Chancery Court judgment, nor may he now seek a determination by this Court that a part of that judgment is not based upon a finding of fraud.

## CONCLUSION

In combination with the preclusive effect of the Chancellor's findings of fact, *Rooker Feldman* tells us that this Debtor is bound by the pre-bankruptcy finding of fraud and the amount of that resulting judgment. There being no issue of material fact left for determination in this Court, the Plaintiff is entitled to summary judgment as a matter of law. The Chancery Court judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), and an Order consistent with this Opinion will be entered.